**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

DONMONIC PERKS, ANTOINE
THOMPSON, THOMAS PRATER, and
KHALIAH HINES,

        Plaintiffs,

v.

Case No.:  2:20-cv-02129-HLT-TJJ

HIGHLAND COMMUNITY COLLEGE, ERIC
INGMIRE, in his individual capacity as Vice
President for Student Services, and BRYAN
DORREL, in his individual capacity as Athletic
Director of Highland Community College,

        Defendants.

## DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT AND JURY DEMAND

    Defendants Highland Community College, Dr. Eric Ingmire and Dr. Bryan Dorrel ("Defendants") hereby answer Plaintiffs' Complaint and Jury Demand [ECF 1] as follows:

### PRELIMINARY STATEMENT

    1.    Responding to paragraph 1, Defendants admit that Plaintiffs seek relief but deny Plaintiffs are entitled to the same.  Defendants deny the remaining allegations contained in paragraph 1 of Plaintiffs' Complaint.

    2.    Responding to paragraph 2, Defendants state that Defendant Highland Community College did not contract with the Highland Police Department until January of 2020. Defendants deny the remaining allegations contained in Paragraph 2 of Plaintiffs' Complaint.

    3.    Responding to paragraph 3, Defendants deny the allegations.

    4.    Responding to paragraph 4, Defendants state that the 2020 football recruiting class at HCC is not determined by students' race or ethnicity.  The HCC football program will continue to

recruit and sign student-athletes into the 2020 football class up to and until August of 2020. Defendants deny the remaining allegations contained in paragraph 4 of Plaintiffs' Complaint.

5.      Responding to paragraph 5, Defendants admit that Plaintiffs are young African American men and woman who attended HCC at the Highland Campus during the Fall 2019 Semester.  Upon information and belief, Plaintiff Mr. Thompson left his previous school, NC State University, following a reported incident and charge of sexual assault and his dismissal from the football team.  Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 5 of Plaintiffs' Complaint, and therefore deny them.

6.      Responding to paragraph 6, Defendants admit that Mr. Perks and Mr. Prater were expelled from HCC.  Defendants deny the remaining allegations contained in paragraph 6 of Plaintiffs' Complaint.

7.      Responding to paragraph 7, Defendants deny the allegations.

8.      Responding to paragraph 8, Defendants admit that Plaintiffs seek relief but deny Plaintiffs are entitled to the same.  Defendants deny the remaining allegations contained in paragraph 8 of Plaintiffs' Complaint.

## JURISDICTION AND VENUE

9.      Responding to paragraph 9, Defendants deny any act or omission by which to establish jurisdiction and therefore deny the allegations.

10.     Responding to paragraph 10, Defendants deny any act or omission by which to establish venue and therefore deny the allegations.

## PARTIES

11.     Responding to paragraph 11, Defendants admit that Plaintiff Donmonic Perks Jr. is an African American male who attended HCC from July 2018 through September 2019.  Defendants

further admit that Plaintiff Donmonic Perks Jr. came to HCC on a football scholarship and played on the HCC football team during the 2019 season.  Defendants state that Mr. Perks was "red-shirted" during the 2018 season.  Defendants state that Mr. Perks was placed on disciplinary probation from February  27, 2019 through May 20, 2020 for having in his possession—while living in student housing—paintball/pellet guns.  He was further notified that any involvement in any further incidents during this time may result in more severe sanctions.  On September 5, 2019 Mr. Perks was charged with violations of the Student Code of Conduct.  Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 11 of Plaintiffs' Complaint, and therefore deny them.

    12.     Responding to paragraph 12, Defendants admit that Plaintiff Antoine Thompson is an African American male who attended HCC from August 2018 through December 2019.  Defendants further admit that Plaintiff Antoine Thompson was awarded a books and tuition scholarship from HCC and played on the HCC football team.  Defendants state that Mr. Thompson was not permitted to enroll with HCC for the Spring 2020 semester because he had an unpaid balance at the beginning of the Spring 2020 semester.  Mr. Thompson did not complete his federal financial aid package until March 2020.  At that time, he was only eligible to receive a Partial Pell Grant.  He had dropped below full time student status prior to the conclusion of the semester and was then only eligible to receive a Partial Pell Grant for the Fall semester and could not borrow loans for Fall semester after the semester had ended.  Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 12 of Plaintiffs' Complaint, and therefore deny them.

    13.     Responding to paragraph 13, Defendants admit that Plaintiff Thomas Prater is an African American male who attended HCC from July 2019 through October 2019.  Mr. Prater was placed on disciplinary probation for multiple classroom disruptions.  While on disciplinary

probation, Mr. Prater violated the student code of conduct again when he insubordinate with cafeteria, which resulted in his expulsion.  The classroom disruptions resulted in his dismissal from a class, dropping him below 12 credit hours.  Defendants further admit that Plaintiff Thomas Prater played on the HCC football team until his academic hours dropped below twelve credit hours, so the Head Football Coach dismissed him from the team.  Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 13 of Plaintiffs' Complaint, and therefore deny them.

14.     Responding to paragraph 14, Defendants admit that Plaintiff Khaliah Hines is an African American woman who currently attends HCC as a student.  Defendants admit that Plaintiff Khaliah Hines has been a member of the women's basketball team for the entirety of her tenure at HCC.  Defendants deny that Ms. Hines has been subjected to regular surveillance and scrutiny by HCC security and administrators because of her race.  Defendants state that Plaintiff Khaliah Hines was involved in an incident of vandalism, an incident of trespassing on a board member's property, and she was also involved in an investigation of academic dishonesty.  Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 14 of Plaintiffs' Complaint, and therefore deny them.

15.     Paragraph 15 of Plaintiffs' Complaint contain legal allegations to which no response is required.  To the extent a response is deemed necessary, Defendants are without sufficient knowledge to admit or deny the allegations, and therefor deny them.

16.     Responding to paragraph 16, Defendants admit that Dr. Ingmire is the Vice President of Student Affairs at HCC.  Defendants admit that pursuant to the HCC Student Handbook, Dr. Ingmire has authority to suspend students from classes and eject them from campus.  Defendants admit that Dr. Ingmire oversees campus security and has some authority to set practices related to

on-campus policing including searches of student dorms and vehicles.  Defendants deny that Dr. Ingmire has the ultimate authority to set practices related to on-campus policing including searches of student dorms and vehicles.  At all relevant times, Dr. Ingmire was acting within the scope of authority as an employee of HCC.  Defendants are without sufficient knowledge to admit or deny the remaining allegations in paragraph 16 of Plaintiffs' Complaint, and therefore deny them.

17.     Responding to paragraph 17, Defendants admit that Defendant Dr. Dorrel is the Athletic Director of HCC and has served in the position since September 2019.  Defendants admit that, under the direction of the President and Board of Trustees, Dr. Dorrel has some authority to formulate policies and procedures that are compliant with HCC policies and NJCAA and Kansas Jayhawk Community College Conference rules and regulations.  Dr. Dorrel does have the authority to formulate policies and procedures for the athletic department related to student recruitment and conduct that align with the mission of the college.  Defendants deny that Dr. Dorrel has the ultimate discretion to impose athletics-related sanctions on student-athletes.  Defendants state that ultimate college discretion comes from the President and/or the Board of Trustees.  Defendants further state that athletic recruitment, athletic conduct and athletic eligibility are determined by the Kansas Jayhawk Community College Conference ("KJCCC"), of which the College President or the President's delegate is a voting member, and the National Junior College Athletics Association ("NJCAA").  At all relevant times, Dr. Dorrel was acting within the scope of authority as an employee of HCC.  Defendants are without sufficient knowledge to admit or deny the remaining allegations in paragraph 17 of Plaintiffs' Complaint, and therefore deny them.

## FACTS

18.     Responding to paragraph 18, Defendants deny the allegations.

19.     Responding to paragraph 19, Defendants admit that Highland Community College receives federal funding.  Defendants are without sufficient knowledge to admit or deny the remaining allegations in paragraph 19 of Plaintiffs' Complaint, and therefore deny them.

20.     Responding to paragraph 20, Defendants admit the allegations.

21.     Responding to paragraph 21, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

22.     Responding to paragraph 22, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

23.     Responding to paragraph 23, Defendants deny the allegations.

24.     Responding to paragraph 24, Defendants deny the allegations.

25.     Responding to paragraph 25, Defendants admit that Dr. Dorrel was hired as HCC's Athletic Director in the fall of 2019. At the time he was hired as HCC's Athletic Director, Dr. Dorrel had previously held the Head Athletic Trainer position at Highland Community in the late 1990's. HCC considers a Head Athletic Trainer position equal to that of a head coach. At the time he was hired as HCC's Athletic Director, he had held positions as a trainer at the NCAA Division II and the NAIA collegiate levels.  He had also been a university Professor.  Dr. Dorrel has 29 years of experience in athletics, sport medicine and higher education.  Dr. Dorrel holds a Ph,D. in Athletic Training. Dr. Dorrel has been published in four peer-reviewed journals and has published a textbook in the past five years.  He has been an invited lecturer and presented over 20 times at professional conferences regarding human movement and the prevention of athletic related injury.  Dr. Dorrel has maintained an extremely active role in attending continuing education training for the last 29 years to stay up-to-date in human performance, sports medicine and the athletics industry of higher education.  The previous Athletic Director at HCC, before Dr. Dorrel, held a bachelor's degree and

was the HCC Housing Director before he became the Athletic Director.  When Dr. Dorrel was hired as Athletic Director, HCC did not have any requirement that the Athletic Director be a collegiate athletic director, assistant director or head coach.  Defendants are without sufficient knowledge to admit or deny the remaining allegations in paragraph 25 of Plaintiffs' Complaint, and therefore deny them.

26.     Responding to paragraph 26, Defendants state that Dr. Dorrel was instructed by the President and Board of Trustees to direct athletic programs to recruit more students from Kansas and Doniphan County because the requirements for in-state athletic scholarships are changing.  Football will be required to have 30 Kansas kids on their roster in 2021.  All other sports are under consideration by the conference for having a Kansas athlete requirement.  HCC receives its primary financial support from Doniphan County and the State of Kansas. Defendants are without sufficient knowledge to admit or deny the remaining allegations in paragraph 26 of Plaintiffs' Complaint, and therefore deny them.

27.     Responding to paragraph 27, Defendants deny the allegations.

28.     Responding to paragraph 28, Defendants deny that they ever instructed coaches to exclude out-of-state athletes from recruitment.  Defendants state that admit that Dr. Dorrel encouraged HCC's football coaches to recruit more students from Kansas and Doniphan County.  Defendants state that Dr. Dorrel was instructed by the President and Board of Trustees to direct athletic programs to recruit more students from Kansas and Doniphan County because the requirements for in-state athletic scholarships are changing.  The conference will require football to have 30 Kansas kids on their roster in 2021.  All other sports are under consideration by the conference for having a Kansas athlete requirement.  HCC receives its primary financial support

from Doniphan County and the State of Kansas.  Defendants deny the remaining allegations in paragraph 28 of Plaintiffs' Complaint.

29.     Responding to paragraph 29, Defendants deny the allegations.

30.     Responding to paragraph 30, Defendants deny that Dr. Dorrel or HCC is trying to reduce the number of black football players for the prospective 2020 season.  Defendants state that the 2020 football recruiting class at HCC is not determined by students' race or ethnicity.  The HCC football program will continue to recruit and sign student-athletes into the 2020 football class up to and until August of 2020.  Defendants are without sufficient knowledge to admit or deny the remaining allegations in paragraph 30 of Plaintiffs' Complaint, and therefore deny them.

31.     Responding to paragraph 31, Defendants deny the allegations.

32.     Responding to paragraph 32, Defendants deny the allegations.

33.     Responding to paragraph 33, Defendants deny the allegations.

34.     Responding to paragraph 34, Defendants deny the allegations.

35.     Responding to paragraph 35, Defendants state that all students requesting to reside in HCC campus housing are required to agree to a background check in order to process a housing contract.  There are other housing options in town if they do not wish to live in student housing.  HCC does not, and has not, conducted a background check because a student was a student-athlete or because of a student's race or ethnicity.  Dr. Dorrel does not conduct criminal background checks.  Defendants deny the remaining allegations contained in paragraph 35 of Plaintiffs' Complaint.

36.     Responding to paragraph 36, Defendants deny the allegations.

37.     Responding to paragraph 37, Defendants deny the allegations.

38.     Responding to paragraph 38, Defendants deny the allegations.

39.     Responding to paragraph 39, Defendants deny the allegations.

40.     Responding to paragraph 40, Defendants deny the allegations.

41.     Responding to paragraph 41, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

42.     Responding to paragraph 42, Defendants deny the allegations.

43.     Responding to paragraph 43, Defendants state that Defendant Highland Community College did not contract with the Highland Police Department until January of 2020. Defendants further state that Brandon Whetstine is Chief of Police.  HCC employed him as a security officer two nights a week. Defendants deny the remaining allegations contained in paragraph 43 of Plaintiffs' Complaint.

44.     Responding to paragraph 44, Defendants deny the allegations.

45.     Responding to paragraph 45, Defendants deny the allegations.

46.     Responding to paragraph 46, Defendants deny the allegations.

47.     Responding to paragraph 47, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

48.     Responding to paragraph 48, Defendants state that Plaintiff Thomas Prater's Residence Assistant ("RA") called HCC security because he received a noise complaint regarding Thomas Prater's room.  HCC Security arrived and smelled marijuana smoke coming from Thomas Prater's room.  HCC security found four students in Thomas Prater's bathroom, and when they opened the door a wall of smoke tumbled out.  HCC security found a "roach" of marijuana.  They did not make an arrest.  Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 48 of Plaintiffs' Complaint, and therefore deny them.

49.     Responding to paragraph 49, Defendants state that Plaintiff Khaliah Hines was involved in the incident of vandalism to college property.  Defendants are without sufficient

knowledge to admit or deny the remaining allegations contained in paragraph 49 of Plaintiffs' Complaint, and therefore deny them.

50.     Responding to paragraph 50, Defendants deny the allegations.  Defendants state that the speed limit on the Highland campus is 20 mph.  The Highland campus buildings are very close together and driving is only available around campus down 3 streets.  The campus security office is located in one of the student apartment buildings.  Security frequently goes from the security office to campus buildings.

51.     Responding to paragraph 51, Defendants deny the allegations.

52.     Responding to paragraph 52, Defendants deny the allegations.

53.     Responding to paragraph 53, Defendants deny the allegations.

54.     Responding to paragraph 54, Defendants deny the allegations.

55.     Responding to paragraph 55, Defendants deny the allegations.

56.     Responding to paragraph 56, Defendants deny the allegations.

57.     Responding to paragraph 57, Defendants state that Board of Trustee member Russell Karn has security cameras on his property.  Ms. Hines trespassed on Mr. Karns private property. Defendants deny the remaining allegations contained in paragraph 57 of Plaintiffs' Complaint.

58.     Responding to paragraph 58, Defendants admit the allegations.

59.     Responding to paragraph 59, Defendants admit the allegations.

60.     Responding to paragraph 60, Defendants deny the allegations.  Defendants state that the student handbook provides: "Disciplinary probation is a written reprimand for a violation for the Student Code of Conduct.  Probation is a period of observation and review of conduct during which the student must demonstrate compliance with HCC policies and procedures.  Students placed on Disciplinary Probation are not considered to be in good judicial standing with HCC for the duration

of the probationary period.  Further violations of the Student Code of Conduct will result in further

sanctions, including suspension or expulsion, especially during the probationary period.  Terms of

the probationary period will be determined at the time probation is imposed and will be confirmed in

writing to the student."

61.     Responding to paragraph 61, Defendants state that Plaintiff Perks and Plaintiff Prater

were on disciplinary probation prior to the incidents that lead to their expulsion, which is consistent

with the policies in HCC's student handbook. Defendants deny the remaining allegations contained

in paragraph 61 of Plaintiffs' Complaint.

62.     Responding to paragraph 62, Defendants are without sufficient knowledge to admit or

deny the allegations, and therefore deny them.

63.     Responding to paragraph 63, Defendants deny the allegations.

64.     Responding to paragraph 64, Defendants deny the allegations.

65.     Responding to paragraph 65, Defendants deny the allegations.

66.     Responding to paragraph 66, Defendants deny the allegations.

67.     Responding to paragraph 67, Defendants admit that Dr. Dorrel, Dr. Ingmire, and

President Fox have policymaking authority on school disciplinary matters. Defendants deny the

remaining allegations contained in paragraph 67 of Plaintiffs' Complaint.

68.     Responding to paragraph 68, Defendants deny the allegations.

69.     Responding to paragraph 69, Defendants state that Dr. Ingmire has been through

substantial training in Civil Rights and Title IX equity issues and serves as the HCC Title IX

coordinator for students.  Dr. Dorrel has been at HCC a short time, but he has been through various

webinars with the NJCAA and KJCCC staff regarding student athletics.  Dr. Dorrel has a 25 year

career in higher education and has been a part of numerous trainings at other institutions.  Dr.

Ingmire has sent security personnel to campus security training. One of the security staff was a trained police officer. Dr. Ingmire has also undergone training on the administration of discipline. Defendants are without sufficient knowledge to admit or deny the allegations the remaining allegations contained in paragraph 69 of Plaintiffs' Complaint, and therefore deny them.

70.     Responding to paragraph 70, Defendants admit that Donmonic Perks is an 18 year-old African American male.   Defendants are without sufficient knowledge to admit or deny the remaining allegations in paragraph 70 of Plaintiffs' Complaint, and therefore deny them.

71.     Responding to paragraph 71, Defendants admit that Donmonic Perks attended HCC and played on the HCC football team.  Defendants state that Plaintiff Perks had a 3.071 GPA when he left Highland Community College.  Defendants are without sufficient knowledge to admit or deny the remaining allegations in paragraph 71 of Plaintiffs' Complaint, and therefore deny them.

72.     Responding to paragraph 72, Defendants deny the allegations.

73.     Responding to paragraph 73, Defendants state that Plaintiff Perks was urinating into soda bottles and throwing them out the window of his student housing apartment.  Maintenance had informed housing they would no longer pick them up.  The Housing Director Tyler Stoldt went to the apartment building in question and found soda bottles with urine in Mr. Perks room.  Even though Mr. Perks was on disciplinary probation at the time, Mr. Stoldt let him off with a verbal warning.  Mr. Perks told Mr. Stoldt he would pick up the bottles.  Defendants deny the remaining allegations contained in paragraph 73 of Plaintiffs' Complaint.

74.     Responding to paragraph 74, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

75.     Responding to paragraph 75, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

76.     Responding to paragraph 76, Defendants state that on September 5, 2019, when approached by HCC Security Offer Scott Young, Plaintiff Mr. Perks shouted "fuck security!". Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 76 of Plaintiffs' Complaint, and therefore deny them.

77.     Responding to paragraph 77, Defendants state that on September 5, 2019, when approached by HCC Security Offer Scott Young in the cafeteria, Plaintiff Mr. Perks shouted "fuck security!".  Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 76 of Plaintiffs' Complaint, and therefore deny them.

78.     Responding to paragraph 78, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

79.     Responding to paragraph 79, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

80.     Responding to paragraph 80, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

81.     Responding to paragraph 81, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

82.     Responding to paragraph 82, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

83.     Responding to paragraph 83, Defendants state that Plaintiff Mr. Perks was already on disciplinary probation when he had his outburst in the cafeteria on September 5, 2019.  Defendants further state that Plaintiff Mr. Perks received a letter from HCC explaining that his appeal was denied.  Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 83 of Plaintiffs' Complaint, and therefore deny them.

84.     Responding to paragraph 84, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

85.     Responding to paragraph 85, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

86.     Responding to paragraph 86, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

87.     Responding to paragraph 87, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

88.     Responding to paragraph 88, Defendants admit that Plaintiff Antoine Thompson is an African American male. Defendants are without sufficient knowledge as to the remaining allegations in paragraph 88 of Plaintiffs' Complaint, and therefore deny them.

89.     Responding to paragraph 89, Defendants deny that Mr. Thompson was on a full football scholarship. Mr. Thompson was on a full books and tuition scholarship. Mr. Thompson did not have a scholarship for housing, meal plans, or course fees. Mr. Thompson failed to complete his financial aid and owed a balance to the school in January 2020. Defendants are without sufficient knowledge as to the remaining allegations in paragraph 89 of Plaintiffs' Complaint, and therefore deny them.

90.     Responding to paragraph 90, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

91.     Responding to paragraph 91, Defendants admit that marijuana was found in a room with Mr. Thompson and several other students. The sheriff was called. Mr. Thompson's subsequent detainment and fine were not the actions of HCC or HCC security. Defendants are without sufficient

knowledge as to the remaining allegations in paragraph 91 of Plaintiffs' Complaint, and therefore deny them.

92.     Responding to paragraph 92, Defendants admit that marijuana was found in a room with Mr. Thompson and several other students.  The sheriff was called.  Mr. Thompson's subsequent detainment and fine were not the actions of HCC or HCC security.  Defendants are without sufficient knowledge as to the remaining allegations in paragraph 92 of Plaintiffs' Complaint, and therefore deny them.

93.     Responding to paragraph 93, Defendants deny the allegations.

94.     Responding to paragraph 94, Defendants deny the allegations.

95.     Responding to paragraph 95, Defendants deny the allegations.

96.     Responding to paragraph 96, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

97.     Responding to paragraph 97, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

98.     Responding to paragraph 98, Defendants admit that Dr. Dorrel informed coaches that Mr. Thompson was not maintaining full-time enrollment per his scholarship. Defendants deny the remaining allegations contained in paragraph 98 of Plaintiffs' Complaint.

99.     Responding to paragraph 99, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

100.     Responding to paragraph 100, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

101.     Responding to paragraph 101, Defendants deny the allegations.

102.     Responding to paragraph 102, Defendants deny the allegations.

103.    Responding to paragraph 103, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

104.    Responding to paragraph 104, Defendants deny the allegations.

105.    Responding to paragraph 105, Defendants deny the allegations.

106.    Responding to paragraph 106, Defendants admit that Dr. Ingmire met with Plaintiff Mr. Thompson and told him (1) Mr. Thompson was not maintaining full time student status per his scholarship; (2)  Mr. Thompson had unpaid, outstanding bills due to the school and had not completed his financial aid;  (3) Mr. Thompson had not met the terms of the housing agreement because he was below 12 hours of classes; (4) Mr. Thompson had been accused of unlawful entry into another students dorm room and there was video evidence of him and two others running from the apartment building; and (5) Mr. Thompson was causing disruptions in the cafeteria with cafeteria staff.  Dr. Ingmire told Mr. Thompson that if he returned to campus, he would be subject to a hearing.  Dr. Ingmire told Mr. Thompson that students cannot enroll with HCC while they have unpaid, outstanding bills due to the school.  Defendants deny the remaining allegations contained in paragraph 106 of Plaintiffs' Complaint.

107.    Responding to paragraph 107, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

108.    Responding to paragraph 108, Defendants deny the allegations.

109.    Responding to paragraph 109, Defendants deny the allegations.

110.    Responding to paragraph 110, Defendants deny the allegations.

111.    Responding to paragraph 111, Defendants state that Mr. Thompson's total bill was $6,245.00.  His amount due was $5,003.00 on September 20, 2019.  It included a credit for a football scholarship for tuition and books of $1,092.00.  Mr. Thompson still owed for student athletic

insurance, housing, food plan and other course fees.  Numerous notices were sent to Mr. Thompson regarding his financial aid.  President Fox had personal conversations with Mr. Thompson regarding his enrollment status.  He did not maintain full time enrollment as a requirement of his scholarship and was not allowed to play in the last regular season football game because he did not meet NJCAA eligibility.  He was in violation of his housing agreement by not maintaining full time status.  Financial aid reached out to him several times to clear up the verification on his federal financial aid application.  Defendants deny the remaining allegations contained in paragraph 111 of Plaintiffs' Complaint.

112.     Responding to paragraph 112, Defendants state that Mr. Thompson's total bill was $6,245.00.  His amount due was $5,003.00 on September 20, 2019.  It included a credit for a football scholarship for tuition and books of $1,092.00.  Mr. Thompson still owed for student athletic insurance, housing, food plan and other course fees.  Numerous notices were sent to Mr. Thompson regarding his financial aid.  President Fox had personal conversations with Mr. Thompson regarding his enrollment status.  He did not maintain full time enrollment as a requirement of his scholarship and was not allowed to play in the last regular season football game because he did not meet NJCAA eligibility. He was in violation of his housing agreement by not maintaining full time status. Financial aid reached out to him several times to clear up the verification on his federal financial aid application.  Defendants are without sufficient knowledge to admit or deny the remaining allegations in paragraph 112 of Plaintiffs' Complaint, and therefore deny them.

113.     Responding to paragraph 113, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

114.     Responding to paragraph 114, Defendants deny that HCC engages in discriminatory practices and policies.  Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 114 of Plaintiffs' Complaint, and therefore deny them.

115.     Responding to paragraph 115, Defendants admit that Thomas Prater is an African American male. Defendants are without sufficient knowledge as to the remaining allegations in paragraph 115 of Plaintiffs' Complaint, and therefore deny them.

116.     Responding to paragraph 116, Defendants admit the allegations.  Mr. Prater was removed from the football team when he was dismissed from his math class and fell below full time status.

117.     Responding to paragraph 117, Defendants deny the allegations.

118.     Responding to paragraph 118, Defendants state that Plaintiff Thomas Prater's Residence Assistant ("RA") called HCC security because he received a noise complaint regarding Thomas Prater's room.  HCC Security arrived and smelled marijuana smoke coming from Thomas Prater's room.  HCC security found four students in Thomas Prater's bathroom, and when they opened the door a wall of smoke tumbled out. HCC security found a "roach" of marijuana.  They did not make an arrest.. Defendants are without sufficient knowledge to  admit or deny the remaining allegations contained in paragraph 118 of Plaintiffs' Complaint, and therefore deny them.

119.     Responding to paragraph 119, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

120.     Responding to paragraph 120, Defendants deny the allegations.

121.     Responding to paragraph 121, Defendants deny the allegations.

122.     Responding to paragraph 122, Defendants state that because of Mr. Prater's criminal past, Mr. Prater had to get permission from the college to attend HCC and transfer jurisdictions.  For

students to reside in campus housing, they have to agree to a check into their criminal background. Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 122 of Plaintiffs' Complaint, and therefore deny them.

123.    Responding to paragraph 123, Defendants deny the allegations.

124.    Responding to paragraph 124, Defendants deny the allegations.

125.    Responding to paragraph 125, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

126.    Responding to paragraph 126, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

127.    Responding to paragraph 127, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

128.    Responding to paragraph 128, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

129.    Responding to paragraph 129, Defendants state that Mr. Prater's paperwork was provided to him electronically, as it is provided to all students per the Student handbook. Defendants are without sufficient knowledge as to the remaining allegations contained in paragraph 129 of Plaintiffs' Complaint, and therefore deny them.

130.    Responding to paragraph 130, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

131.    Responding to paragraph 131, Defendants admit that Ms. Hines is an African American woman.  Defendants are without sufficient knowledge as to the remaining allegations in paragraph 131 of Plaintiffs' Complaint, and therefore deny them.

132.    Responding to paragraph 132, Defendants admit the allegations.

133.    Responding to paragraph 133, Defendants deny the allegations.

134.    Responding to paragraph 134, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

135.    Responding to paragraph 135, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

136.    Responding to paragraph 136, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

137.    Responding to paragraph 137, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

138.    Responding to paragraph 138, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

139.    Responding to paragraph 139, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

140.    Responding to paragraph 140, Defendants state that Plaintiff Khaliah Hines was involved in the incident of vandalism to college property. Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in paragraph 140 of Plaintiffs' Complaint, and therefore deny them.

141.    Responding to paragraph 141, Defendants deny that the allegations. Defendants state that Plaintiff Hines was involved in a legitimate academic dishonesty investigation.

142.    Responding to paragraph 142, Defendants deny that any student-athletes who improve their grades during a summer term are presumed to be cheating or targeted for investigations, regardless of their race or other protected class. Defendants deny the remaining allegations contained in paragraph 142 of Plaintiffs' Complaint.

143.     Responding to paragraph 143, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

144.     Responding to paragraph 144, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

## CLAIMS FOR RELIEF

### Count 1: Fourteenth Amendment Equal Protection Claim

145.     Responding to paragraph 145, Defendants restate and incorporate the averments in paragraphs 1 through 144 above as if fully set forth herein.

146.     Paragraph 146 contains legal allegations to which no response is required. To the extent a response is deemed necessary, Defendants are without sufficient knowledge as the allegations in paragraph 146 of Plaintiffs' Complaint, and therefore deny them.

147.     Responding to paragraph 147, Defendants deny the allegations.

148.     Responding to paragraph 148, Defendants deny the allegations.

149.     Paragraph 149 of Plaintiffs' Complaint contains legal allegations to which no response is required. To the extent a response is deemed necessary, Defendants deny depriving Plaintiffs of their constitutional rights. Defendants are without sufficient knowledge to admit or deny the remaining allegations, and therefore deny them.

### Count 2: Fourteenth Amendment Equal Protection Claim

150.     Responding to paragraph 150, Defendants restate and incorporate the averments in paragraphs 1 through 149 above as if fully set forth herein.

151.     Responding to paragraph 151, Defendants admit that Plaintiffs are members of a suspect class but Defendants deny that Plaintiffs were unlawfully discriminated against because of their race.

152.    Responding to paragraph 152, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

153.    Responding to paragraph 153, Defendants deny the allegations.

154.    Paragraph 154 of Plaintiffs' Complaint contains legal allegations to which no response is required.  To the extent a response is deemed necessary, Defendants deny depriving Plaintiffs of their constitutional rights.  Defendants are without sufficient knowledge to admit or deny the remaining allegations, and therefore deny them.

### Count 3: Title VI of the Civil Rights Act of 1964 Claim

155.    Responding to paragraph 155, Defendants restate and incorporate the averments in paragraphs 1 through 154 above as if fully set forth herein.

156.    Paragraph 156 of Plaintiffs' Complaint contains legal allegations to which no response is required.  To the extent a response is deemed necessary, Defendants admit the allegations.

157.    Responding to paragraph 157, Defendants deny the allegations.

158.    Responding to paragraph 158, Defendants deny the allegations.

159.    Responding to paragraph 159, Defendants deny the allegations.

### Count 4: Fourth Amendment Claim

160.    Responding to paragraph 160, Defendants restate and incorporate the averments in paragraphs 1 through 159 above as if fully set forth herein.

161.    Paragraph 161 of Plaintiffs' Complaint contains legal allegations to which no response is required.  To the extent a response is deemed necessary, Defendants admit the allegations.

162.    Responding to paragraph 162, Defendants deny the allegations.

163.     Responding to paragraph 163, Defendants are without sufficient knowledge to admit or deny the allegations, and therefore deny them.

164.     Responding to paragraph 164, Defendants deny the allegations.

165.     Responding to paragraph 165, Defendants deny the allegations.

166.     Responding to paragraph 166, Defendants deny the allegations.

167.     Responding to paragraph 167, Defendants deny the allegations.

## Count 5: Breach of Contract

168.     Responding to paragraph 168, Defendants restate and incorporate the averments in paragraphs 1 through 167 above as if fully set forth herein.

169.     Responding to paragraph 169, Defendants deny the allegations.

170.     Responding to paragraph 170, Defendants deny the allegations.

171.     Responding to paragraph 171, Defendants deny the allegations.

172.     Responding to paragraph 172, Defendants deny the allegations.

## Count 6: Breach of Implied Covenant of Good Faith and Fair Dealing

173.     Responding to paragraph 173, Defendants restate and incorporate the averments in paragraphs 1 through 172 above as if fully set forth herein.

174.     Paragraph 174 contains legal allegations to which no response is required. To the extent a response is deemed necessary, Defendants deny the allegations.

175.     Responding to paragraph 175, Defendants deny the allegations.

176.     Responding to paragraph 176, Defendants deny the allegations.

177.     Responding to paragraph 177, Defendants deny the allegations.

Responding to Plaintiffs' Prayer for Relief and Wherefore clause, Defendants deny that Plaintiffs are entitled to any of the relief sought in their Prayer For Relief and their Wherefore

clause, including subparts (A) through (I).  Defendants pray that they be dismissed from this action and awarded their costs and fees incurred, along with any other relief deemed just and proper.

## ANSWER TO ALL ALLEGATIONS

Defendants deny each and every allegation in Plaintiffs' Complaint and Jury Demand that Defendants did not specifically admit in this Answer, including the relief requested in any prayer for relief.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Defendants' affirmative and additional defenses are set forth below. By stating a defense, Defendants do not thereby assume the burden of proof on that defense except to the extent applicable law requires Defendants to plead and prove the defense in order to avail themselves of the defense. Defendants reserve their right to amend their Answer and to add or delete any additional defenses as investigation, discovery, or circumstances warrant.

178.    Plaintiffs' Complaint fails to state a claim, in whole or in part, upon which relief may be granted.

179.    Plaintiffs' claims are barred by the doctrine of estoppel, unclean hands, waiver, and/or laches.

180.    Plaintiffs have failed to comply with all statutory, jurisdictional, and procedural requirements, including the exhaustion of administrative remedies.

181.    On some or all of Plaintiffs' claims, Plaintiffs have failed to comply with all Kansas state procedural requirements, including those set forth in K.S.A. 12-105b.

182.    Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations or other jurisdictional prerequisites.

183.    Plaintiffs have not suffered any damages.

184.   Plaintiffs have failed to mitigate their damages, to the extent any exist.

185.   Plaintiffs' alleged damages, to the extent any exist, were caused in whole or in part by sources other than any alleged unlawful actions by Defendants.  Accordingly, any such damages should either be completely denied or apportioned according to the evidence.

186.   Plaintiffs' alleged damages, to the extent they exist, are speculative and uncertain, and therefore, not compensable.

187.   Defendants deny committing any violation of any law, including but not limited to Title VI of the Civil Rights Act, the Fourteenth Amendment, and the Fourth Amendment.

188.   Defendants deny breaching any contract, implied or express, between Defendants and Plaintiffs.

189.   Defendants deny breaching the implied covenant of good faith and fair dealing.

190.   All Actions taken by the Defendants were taken for legitimate, non-discriminatory, and non-retaliatory reasons, were made in good faith exercise of reasonable business judgment, and were based on legitimate reasons unrelated to Plaintiffs' race or any other protected characteristics.

191.   Any recovery on Plaintiffs' Complaint is barred, in whole or in part, because Defendants maintained policies prohibiting unlawful conduct and providing an educational environment free from discrimination, harassment, and retaliation.

192.   Some or all of Plaintiffs' claims are barred by the doctrine of Qualified Immunity.

193.   Some or all of Plaintiffs' claims are barred by the doctrine of Governmental Immunity.

194.   Some or all of Plaintiffs' claims are barred because, to the extent Plaintiff reported any alleged discrimination, harassment, or retaliation, Defendants promptly investigated the report and took prompt and appropriate remedial action.

195.    Defendants reserve the right to assert additional facts supporting their defenses asserted either through motion or amended pleadings.

WHEREFORE, having fully answered Plaintiffs' Complaint and Jury Demand, Defendants request that Plaintiffs take nothing by the Complaint, that judgment be entered in favor of Defendants, and that the Court award Defendants their costs, attorneys' fees, and any additional relief this Court deems just and proper.

## JURY TRIAL DEMANDED

Defendants hereby respectfully demand a jury trial for all claims so triable.

## DESIGNATION OF PLACE OF TRIAL

Defendants designate Kansas City, Kansas as the place of trial for this action.

/s/ Alan L. Rupe
Alan L. Rupe, KS # 08914
Nanette Turner Kalcik, KS # 24030
Ellen Rudolph, KS # 27945
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone: (316) 609-7901
Facsimile: (316) 462-5746
alan.rupe@lewisbrisbois.com
nanette.kalcik@lewisbrisbois.com
ellen.rudolph@lewisbrisbois.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify on June 11, 2020, I electronically filed the foregoing Answer with the Clerk

of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

/s/ Alan L. Rupe
Alan L. Rupe